**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **CHRISTINA MOJICA BORJAS,**<br><br>Plaintiff,<br><br>v.<br><br>**EL OTRO PUERTO RICO, INC.; and**<br><br>**JEROHIM ALONSO MENCHACA ORTIZ,**<br><br>Defendants. | Civil No. 3:26-cv-01337-SCC<br><br><br>Re: Sexual Harassment (Quid Pro Quo and Hostile Work Environment); Gender Discrimination; Retaliation; Unjust Dismissal; Workplace Harassment; Damages |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

**TO THE HONORABLE COURT:**

Defendants El Otro Puerto Rico, Inc. ("EOPR") and Jerohim Alonso Ortiz Menchaca ("Mr. Ortiz Menchaca" and together with EOPR, "Defendants"), through the undersigned counsel, respectfully move this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Complaint filed by Plaintiff Christina Mojica Borjas ("Plaintiff") in its entirety or, in the alternative, in part, for the reasons set forth below.

**I. INTRODUCTION**

This action was filed exclusively on the basis of diversity jurisdiction under 28 U.S.C. § 1332. No federal question is pled. As a threshold matter, the Complaint's own allegations regarding Plaintiff's purported Florida domicile, virtually all of which arose within weeks or months of the filing of this suit, and several of which directly contradict Plaintiff's own sworn representations to

1

Puerto Rico administrative agencies made as recently as May 2025 do not establish the bona fide, indefinite change of domicile that diversity jurisdiction requires. Because Defendants EOPR and Mr. Ortiz Menchaca are, and at all relevant times have been, domiciled in Puerto Rico, and because Plaintiff has not carried her burden of establishing a genuine change of domicile away from Puerto Rico, this Court lacks subject matter jurisdiction, and the Complaint must be dismissed under Rule 12(b)(1).

In the alternative, should the Court find that diversity jurisdiction exists, the Complaint should still be dismissed in whole or in part under Rule 12(b)(6) because: (a) all claims against Defendant Mr. Ortiz Menchaca are time-barred, as he was never named as a respondent in the underlying administrative charge and therefore did not benefit from, nor was he bound by, any tolling effect that charge may have had as to EOPR; (b) the written Professional Services Agreement that Plaintiff's own Complaint describes as having created and defined her relationship with EOPR establishes, on its face, that Plaintiff rendered services as an independent contractor and not as an "employee" within the meaning of the Puerto Rico statutes invoked in the Complaint, a status that, standing alone, defeats every pleaded cause of action; (c) any attempted Title VII claim is independently time-barred and, in any event, is not actually pleaded; (d) each count also fails to plead the statutory elements required under the invoked Puerto Rico law, independent of Plaintiff's employment status; and (e) the Complaint's prayer for relief impermissibly seeks duplicative enhanced-damages recoveries for the same alleged course of conduct.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1. On February 26, 2024, Plaintiff and EOPR executed a written "Contrato de Servicios Profesionales" (the "Agreement"), under which Plaintiff agreed to render services to EOPR as an independent contractor, performing public-policy research including housing-policy

research, meetings with relevant professionals and institutions, and preparation of a comprehensive housing-system reform proposal, for a term running from March 1, 2024, for one hundred eighty (180) days, renewable for an additional 180-day term upon notice from EOPR.

2. Clause Fourth of the Agreement expressly states that the parties act as separate entities, that the relationship created is one of independent contractor, that no employer-employee relationship of any kind is established between the parties, that employment deductions do not apply, and that Plaintiff, not EOPR, is responsible for her own federal Social Security contributions.

3. Clause Fifth establishes compensation at $20.00 per hour, capped at eighty (80) hours per month, paid only through monthly invoices submitted by Plaintiff and reviewed against contractual deliverables, therefore an invoice-based structure, not a salary.

4. Clause Sixth fixes the Agreement's term at 180 days beginning March 1, 2024, with any additional term requiring notice from EOPR; Clause Twelfth permits termination or non-renewal upon thirty (30) days' written notice.

5. On April 3, 2024, during the term of the Agreement, the Puerto Rico Department of Treasury issued Plaintiff a Merchant Registration Certificate, in her own name, for NAICS 54172 (Research and Development in the Social Sciences and Humanities), at 596 Avenida Hostos, San Juan, classifying her as an "agente no retenedor" (non-withholding agent) and remaining effective through January 31, 2026. Plaintiff thus held herself out to Puerto Rico's Treasury Department as a merchant conducting the very category of professional research for which EOPR contracted.

6. On July 25, 2024, EOPR notified Plaintiff, with more than thirty (30) days' advance notice as contemplated by the Agreement, that her Agreement would not be renewed upon its expiration. EOPR did not discharge Plaintiff from indefinite employment; it declined to exercise a contractual renewal option at the end of a fixed term.

7. On February 24, 2025, approximately seven months later, Plaintiff, through counsel, sent Defendants an extrajudicial demand letter, addressed to Mr. Ortiz Menchaca personally as EOPR's President, asserting claims for unlawful termination, gender discrimination, sexual harassment, and retaliation under Laws 100, 115, 80, 17, and 90, asserting possible personal liability against Mr. Ortiz Menchaca under Law 17, and demanding $75,000.00 plus twenty-five percent (25%) in attorney's fees, with the offer remaining open for ten days. EOPR, through counsel, responded rejecting the allegations and, without any admission of fact or law, offered $2,500.00 in full and final settlement.

8. On or about May 12, 2025, Plaintiff signed and filed a sworn charge of discrimination with the Puerto Rico Department of Labor and Human Resources, Anti-Discrimination Unit ("UAD"), Case No. UADAU 25-134A / EEOC No. 16H-2025-00227, naming El Otro Puerto Rico, Inc., and only El Otro Puerto Rico, Inc., as the respondent employer, and checking sex discrimination and retaliation. Defendant Mr. Ortiz Menchaca was never named as a respondent in that administrative charge. The administrative notice sent to EOPR identified Law 100, Law 69, and Title VII; it did not identify Law 80, Law 115, Law 17, or Law 90 as statutes under investigation.

9. In that same sworn charge, Plaintiff represented her home address as 596 Avenida Hostos, San Juan, Puerto Rico 00918 (the same address reflected in the Agreement and in her Merchant Registration Certificate), and narrated more than five years of continuous

political and community engagement in Puerto Rico dating to 2020, with no reference to any intended relocation.

10. On November 6, 2025, Plaintiff voluntarily withdrew the UAD charge. By letter dated December 8, 2025, the UAD accepted the withdrawal, authorized litigation, and closed the administrative proceeding without any factual or legal determination on the merits.

11. On June 2, 2026, Plaintiff filed the instant Complaint, invoking diversity jurisdiction under 28 U.S.C. § 1332 and alleging, for the first time in this dispute, that she is domiciled in St. Petersburg, Florida. In support, the Complaint alleges: (a) utility service in her name since March 2025; (b) a residential lease effective July 28, 2025; (c) a Florida identification card issued March 27, 2026; (d) Florida voter registration effective March 27, 2026; (e) a Florida driver's license issued April 14, 2026; and (f) a Declaration of Domicile executed April 16, 2026. Every one of these indicia post-dates the extrajudicial demand letter, and the majority (the Florida identification card, voter registration, driver's license, and Declaration of Domicile) were generated within approximately six to ten weeks of the filing of this action.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(1) — Factual Challenge to Subject Matter Jurisdiction

A defendant may challenge subject matter jurisdiction either facially, accepting the plaintiff's jurisdictional allegations as true, or factually, by "controvert[ing] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position." *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). Where, as here, a factual challenge is mounted, the plaintiff's jurisdictional averments are entitled to no presumptive weight, and the Court must resolve the factual disputes

between the parties. *Id*. The burden of proving jurisdiction rests at all times with the party invoking it. The Court may consider the charge, the Agreement, the merchant certificate, the closure letter, and other jurisdictional evidence without converting this motion into one for summary judgment. *Valentín*, 254 F.3d at 363-64.

### B. Rule 12(b)(6) — Failure to State a Claim

A complaint must plead enough facts to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 570 (2007). Legal conclusions and conclusory characterizations are disregarded and are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Documents expressly referenced by and central to a complaint, such as the Agreement here, merge into the pleadings and may be considered on a motion to dismiss without conversion to summary judgment. *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998).

## IV. ARGUMENT

### A. THE COURT LACKS DIVERSITY JURISDICTION BECAUSE PLAINTIFF HAS NOT PROVED A GENUINE FLORIDA DOMICILE

For purposes of diversity jurisdiction, citizenship is equated with domicile, not mere residence. *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904). Domicile requires two elements: physical presence in the state and the intent to remain there indefinitely (animus manendi). *Rodríguez-Díaz v. Sierra-Martínez*, 853 F.2d 1027, 1029 (1st Cir. 1988); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). Domicile is measured on the filing date, *Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992), and once acquired, a domicile is presumed to continue until a new one is affirmatively shown. *Mitchell v. United States*, 88 U.S. (21 Wall.) 350, 353 (1874); *Bank One*, 964 F.2d at 53. A party can have only one domicile at a time, and the party invoking diversity jurisdiction bears the burden of establishing it. *Id*.

Objective considerations bearing on domicile include where civil and political rights are exercised, where taxes are paid, where property and vehicles are located, where licenses are obtained, where bank accounts are maintained, and where business or employment is conducted. *Bank One*, 964 F.2d at 53. No single formality controls, and voter registration, while weighty, is not dispositive. Id.

Motive alone is not disqualifying: a party may change domicile even for the express purpose of creating diversity jurisdiction, provided the change is genuine. *Williamson v. Osenton*, 232 U.S. 619, 624-25 (1914). Defendants' challenge accordingly does not rest on litigation motive alone; it rests on Plaintiff's failure to prove actual physical relocation coupled with a genuine, indefinite intent to remain in Florida, against the presumption that her established Puerto Rico domicile continued.

The First Circuit's decision in *Valentín v. Hospital Bella Vista* is squarely on point. There, a Puerto Rico plaintiff asserted Florida domicile based in part on a Florida driver's license, while retaining significant ongoing ties to Puerto Rico, including employment, vehicle registration, and bank accounts. 254 F.3d at 365-67. The First Circuit affirmed dismissal for lack of diversity jurisdiction, holding that such formal steps, unaccompanied by genuine and complete relocation, do not establish domicile, and that a "mere intention to move in the future" is insufficient. *Id*.

Applied here, the Complaint's own allegations do not establish a bona fide change of domicile, and the contemporaneous record contradicts them. First, as to timing: virtually every indicium of Florida domicile alleged in the Complaint post-dates the extrajudicial demand letter of February 24, 2025, and the majority (the Florida identification card, voter registration, driver's license, and Declaration of Domicile) were obtained between late March and mid-April 2026, within

approximately six to ten weeks of filing suit on June 2, 2026. This compressed timeline, concentrated at the very threshold of litigation, is itself probative of the absence of a genuine, longstanding intent to remain in Florida indefinitely. Second, as to contradiction by Plaintiff's own sworn statements: as late as May 12, 2025, after the date the Complaint alleges Florida utility service began, Plaintiff swore, in her UAD charge, that her home address was 596 Avenida Hostos, San Juan, Puerto Rico, and narrated more than five years of continuous, active community and political engagement in Puerto Rico with no reference to any intended relocation. A party's own prior sworn representations are competent evidence bearing on the genuineness of a later-asserted domicile change, and here they directly undercut it. Third, as to substantive ties: the Complaint alleges no Florida employment, business activity, tax filings, professional license, business registration, or other durable economic connection to Florida only recently-created formal indicia of the kind Valentín held insufficient standing alone.

Because EOPR is, and at all relevant times has been, a Puerto Rico nonprofit corporation with its principal place of business in San Juan, and Mr. Ortiz Menchaca is domiciled in Puerto Rico, complete diversity is destroyed if Plaintiff remains, as the present record indicates, domiciled in Puerto Rico. Because no federal question is pled, the absence of diversity leaves this Court without any basis for subject matter jurisdiction, and the Complaint should be dismissed under Rule 12(b)(1).

Should the Court conclude that the present record does not permit a definitive ruling, Defendants respectfully request, in the alternative, leave to conduct narrowly tailored jurisdictional discovery, concerning Plaintiff's federal and Puerto Rico tax filings, Florida employment and income, bank and vehicle records, physical presence and travel history, and the actual commencement and

8

continuity of occupancy under the Florida lease followed by an evidentiary hearing before any ruling on the merits. See *Valentín*, 254 F.3d at 363-64.

### B. ALL CLAIMS AGAINST DEFENDANT MR. ORTIZ MENCHACA ARE TIME-BARRED

Puerto Rico requires a claim-by-claim and defendant-by-defendant prescription analysis. An extrajudicial demand must be timely, made by the right-holder, transmitted through an adequate means, and maintain identity between the right demanded and the right later sued upon; interruption begins a new full period, and administrative suspension exists only where the statute or the identity of purposes between the administrative and judicial proceedings supports it. *Díaz Santiago v. Int'l Textile Prods. of P.R., Inc.*, 195 D.P.R. 862, 873-84 (2016); *Cintrón v. Estado Libre Asociado de P.R.*, 127 D.P.R. 582, 592-93 (1990).

The last act alleged against Mr. Ortiz Menchaca occurred no later than July 25, 2024. The February 24, 2025 extrajudicial demand letter, addressed to Mr. Ortiz Menchaca personally and expressly invoking Laws 100, 115, 80, 17, and 90 with a threat of personal liability under Law 17, at most restarted a new one-year prescriptive term running through approximately February 24, 2026. But the subsequent UAD charge, filed May 12, 2025, named El Otro Puerto Rico, Inc., and only El Otro Puerto Rico, Inc. as respondent. Mr. Ortiz Menchaca was never named as a party to that administrative proceeding, never received a determination concerning his individual liability, and was never afforded party status. Under *Díaz Santiago*, the tolling effect of an administrative charge cannot be extended to protect claims against a party who was never made a respondent to it; identity of parties is a distinct and independent requirement from identity of rights and adequacy of the means employed. *Díaz Santiago* 195 D.P.R. at 878-84.

Accordingly, whatever tolling benefits the May 2025 charge and its December 8, 2025 closure conferred on Plaintiff's claims against EOPR did not, and as a matter of law could not, extend to

9

Mr. Ortiz Menchaca individually. The only interruptive act properly attributable to him is the February 24, 2025 letter, and a new one-year term as to Mr. Ortiz Menchaca, on the present record, expired before the Complaint was filed on June 2, 2026, more than three months after that term's outer limit. All claims against Mr. Ortiz Menchaca under Laws 17, 100, 115, 90, and the Civil Code should therefore be dismissed with prejudice as prescribed. Defendants reserve the right to further develop this defense, including through a properly supported summary judgment motion, to the extent any factual dispute remains regarding the administrative record or any additional interruptive act.

### C. PLAINTIFF WAS A BONA FIDE INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE

Every count in the Complaint depends on Plaintiff having been an "employee" of EOPR. The Agreement that Plaintiff's own Complaint describes as having created and defined her relationship with EOPR and upon which every allegation concerning the terms, duration, and conditions of that relationship is admittedly dependent establishes, on its face, an independent contractor relationship, and merges into the pleadings for purposes of this motion. *Beddal*l, 137 F.3d at 16-17.

When an employment statute uses the conventional term "employee," courts apply common-law agency principles considering control over the manner and means of the work, skill required, source of tools, location of the work, duration of the relationship, discretion over working time, method of payment, provision of benefits, and tax treatment, among other factors. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-24 (1992); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-52 (1989). The First Circuit applied these factors in the Puerto Rico context and held that a genuine independent contractor is not an "employee" under Title VII or its Puerto Rico

analogues. *Alberty-Vélez v. Corporación de P.R. para la Difusión Pública*, 361 F.3d 1, 6-8 (1st Cir. 2004). A court may resolve employee status as a matter of law when the factors point overwhelmingly in one direction. *Id*. at 7.

Puerto Rico's Labor Transformation and Flexibility Act likewise excludes bona fide independent-contractor relationships from the definition of employment. Act No. 4-2017, arts. 2.2-2.3, 29 L.P.R.A. §§ 122a-122b. The Puerto Rico Supreme Court identifies control as the single most important factor, alongside judgment and initiative, method of compensation, authority over other workers, opportunity for profit or loss, ownership of equipment, tax withholding, economic dependence, permanence, and whether the services are integral to or separable from the alleged employer's ordinary business. *Whittenburg v. Colegio Nuestra Señora del Carmen*, 182 D.P.R. 937, 952-54 (2011); *SLG Hernández-Beltrán v. TOLIC*, 151 D.P.R. 754, 768 (2000).

Puerto Rico's Labor Transformation and Flexibility Act, Act No. 4-2017 L.P.R.A. §§ 122a-122b, establishes a rebuttable statutory presumption that an individual is an independent contractor rather than an employee when the statutory criteria are met. Here, those statutory criteria are met by the undisputed documentary evidence and Plaintiff's own allegations, thereby triggering the statutory presumption that Plaintiff was an independent contractor and not an employee throughout the parties' contractual relationship. Plaintiff has alleged no facts capable of overcoming that presumption.

The Agreement's express terms establish precisely the indicia Alberty-Vélez and Whittenburg treat as controlling: Plaintiff entered a defined, skilled research project for a fixed 180-day term; was compensated on an hourly, invoice-based structure capped at eighty hours per month, rather than a salary; bore her own Social Security obligations by express contractual assignment; concurrently

held a Puerto Rico Merchant Registration Certificate for the identical professional field; and was subject to termination or non-renewal on thirty days' notice, exactly as occurred. She lacked paid leave, employee benefits, tax withholding, and, on the face of the Agreement, a fixed daily schedule or exclusivity requirement, and by her own account maintained other concurrent employment. EOPR's right to review deliverables against contractual results, and to coordinate scheduling of team meetings, reflects contractual quality control over a defined work product, not the day-to-day control over manner and means characteristic of employment.

*Vélez Arroyo v. HPM Found., Inc.*, 2023 TSPR 38, 211 D.P.R. __ (2023), does not aid Plaintiff. That case involved forty mandatory hours per week divided into fixed eight-hour days, fixed attendance, employer-owned tools and office space, direct supervision of subordinate employees, formal performance evaluations in a department-director role, and employee bonuses. Those indicia are entirely absent here: the Agreement imposes a monthly ceiling, not a minimum; provides invoice-based payment, not payroll; requires no fixed daily attendance; assigns no department-management role; and expressly, and independently, establishes a separate-business classification corroborated by the contemporaneous Merchant Registration Certificate.

The Complaint cannot defeat these objective, contemporaneous documents merely by repeatedly characterizing the Agreement as an "employment contract." That legal conclusion is not entitled to a presumption of truth on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Because Plaintiff was not an "employee" within the meaning of Laws 17, 100, 115, 80, or 90, every count predicated on employee status should be dismissed.

### D. ANY TITLE VII CLAIM IS UNTIMELY, AND NO TITLE VII COUNT IS ACTUALLY PLEADED

12

Title VII requires suit within ninety days of receipt of the federal right-to-sue notice. 42 U.S.C. § 2000e-5(f)(1). Failure to comply is a limitations defect. *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-52 (1984) (per curiam); *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 142-44 (1st Cir. 2012). Absent proof of actual receipt, the First Circuit presumes receipt within a reasonable mailing period, commonly three to five days. *Loubriel*, 694 F.3d at 143-44. Equitable tolling is available only sparingly. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990).

Plaintiff alleges that UAD issued its closure letter on December 8, 2025. If received three to five days later, the ninety-day Title VII filing deadline expired between March 11 and March 13, 2026. Plaintiff did not file this action until June 2, 2026 (eighty-one to eighty-three days after that deadline). The Complaint alleges no misleading conduct, defective notice, timely filing in the wrong forum, incapacity, or other extraordinary circumstances that would support equitable tolling.

The December 8, 2025 document in the present record was issued by the Puerto Rico Anti-Discrimination Unit following Plaintiff's voluntary withdrawal of her administrative charge; it is not, on its face, an EEOC Notice of Right to Sue, and a local UAD authorization does not necessarily substitute for the EEOC's federal notice. See *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 235 F. Supp. 2d 95, 100-03 (D.P.R. 2002). The consequence is dispositive either way: if the December 8 letter was the operative federal notice, as Plaintiff's Complaint appears to assume, the ninety-day period expired in March 2026; if it was not, Plaintiff has neither pleaded nor established the federal notice required to exhaust Title VII. In any event, Counts I through VII of the Complaint arise only under Puerto Rico law; no Title VII count is pled, and any future attempt to add or recast a count under Title VII would be untimely absent a particularized and legally sufficient tolling or relation-back showing.

## *E. EACH COUNT ALSO FAILS ON ITS OWN TERMS*

Quid pro quo sexual harassment requires a tangible employment benefit or detriment conditioned on submission to sexual conduct. The Complaint alleges no express request for sexual conduct, no condition communicated to Plaintiff, and no factual allegation that the Agreement was offered only if she accepted an advance; the allegation that the offer can be "reasonably understood" as implicitly conditioned is a legal conclusion. The Agreement was awarded, Plaintiff performed it for its fixed term, and EOPR provided advance notice of non-renewal. Count I does not plausibly connect any contractual decision to submission or rejection of sexual conduct.

Hostile work environment requires conduct because of sex that is objectively and subjectively severe or pervasive enough to alter the conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). The pleading combines social-media conversations, questions about personal relationships, comments about dates, seating arrangements, lateness, and ordinary workplace friction; much of which is neither sexual nor objectively threatening. Even crediting these allegations in full, the Complaint does not plausibly cross the severe-or-pervasive statutory threshold, and, as set forth above, Plaintiff was not an employee covered by the invoked employment statutes.

Law 100 does not make every unpleasant workplace interaction actionable. Plaintiff must plausibly allege an adverse employment action because of sex. The Complaint identifies no similarly situated comparator treated more favorably, no gender-based criterion in the Agreement, and no non-conclusory factual basis for inferring that non-renewal occurred because Plaintiff is a woman; its references to other women are speculative, involve materially different circumstances, and do not establish a comparator or discriminatory policy.

Law 80 protects employees hired for an indefinite term who are discharged without just cause, subject to statutory rules governing fixed-term engagements. Plaintiff signed an 180-day professional-services agreement with a conditional renewal clause; EOPR provided timely notice of non-renewal and allowed the agreed term to expire on its own terms. An alleged oral expectation of a longer engagement cannot override the Agreement's written duration and renewal provisions. Count V fails as a matter of law independent of Plaintiff's status as a non-employee.

Law 115 protects an employee who offers or attempts to offer testimony, expression, or information in specified legislative, administrative, or judicial forums, or who provides information concerning statutory violations. The Complaint alleges that Plaintiff delayed responding to personal messages, blocked social-media access, objected to Mr. Ortiz Menchaca's tone, and declined to endorse a press-release statement, personal boundary-setting and workplace disagreements that, without more, do not constitute the statutorily protected activity Law 115 requires. See *Rivera Prudencio v. Municipality of San Juan*, 170 D.P.R. 149, 159-65 (2007). Count IV should be dismissed independently of any limitations defense.

Law 90 protects employees and imposes procedural prerequisites the Complaint does not plausibly plead; Count VI fails both for lack of employee status and for failure to plead compliance with the statute's internal-remedy framework. Count VII merely repackages the same alleged discrimination, harassment, retaliation, and non-renewal as generalized Civil Code damages; Puerto Rico does not permit duplicative recovery under a general tort theory where a special labor statute already supplies the remedy for the same conduct. See *Santini Rivera v. Serv. Air, Inc.*, 137 D.P.R. 1, 16-17 (1994). Count VII is, in addition, prescribed as to Mr. Ortiz Menchaca for the reasons stated in Section IV.B, above.

### *F. THE PRAYER SEEKS IMPERMISSIBLY DUPLICATIVE ENHANCED DAMAGES*

The Prayer for Relief simultaneously seeks double indemnification under Law 100, double compensation under Laws 115 and 17, separate punitive damages, general Civil Code damages, back pay, front pay, and a Law 80 *"mesada"*, all arising from the same underlying course of conduct. Puerto Rico law does not permit multiple recoveries for the same injury merely by multiplying statutory labels. At minimum, the Court should strike or limit the duplicative enhanced-damages theories, including any punitive damages unavailable under the pleaded Puerto Rico statutes.

## V. CONCLUSION

WHEREFORE, Defendants respectfully request that this Honorable Court: (1) DISMISS the Complaint in its entirety, without prejudice, for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); or, in the alternative, (2) DISMISS with prejudice all claims against Defendant Jerohim Alonso Ortiz Menchaca as time-barred; (3) DISMISS Counts I through VII for failure to state a claim, given Plaintiff's status as an independent contractor and the count-specific pleading defects identified above; (4) HOLD that no Title VII count is pled and that any attempted Title VII claim is untimely and/or unexhausted; (5) STRIKE or limit Plaintiff's duplicative enhanced-damages theories; and (6) GRANT such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 23th day of July, 2026.

*s/MIGUEL FRANCISCO MARRERO SÁNCHEZ*
**MIGUEL FRANCISCO MARRERO SÁNCHEZ**
USDC-PR No. 304602
PO BOX 13411

16

San Juan, PR 00908
Tel. (787) 210-7095
Email: miguel.marrero.law@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this same date, I electronically filed the foregoing with the Clerk of

the Court through the CM/ECF system, which will send notification of such filing to all counsel

of record.